SO ORDERED: October 1, 2012.



Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AARON DAVID ROONEY | ) | CASE NO. 12-5680-AJM-7A |
| TERESA WOOD ROONEY | ) | |
| | ) | |
| Debtors | ) | |

**ORDER DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS**

The Debtors filed this chapter 7 case on May 14, 2012 (the "Petition Date"). According to the "Chapter 7 Statement of Current Monthly Income and Means Test Calculation" (Form B22A known as "the Means Test"), the Debtors are above-median income debtors and therefore were required to complete Parts IV, V, VI, VII and VIII of the Means Test.  The "presumption of abuse" arose even by the Debtors' calculations on the Means Test, primarily because Debtor Aaron Rooney's annual bonus of approximately $23,000 was paid within the six month period before the Petition Date and the prorated half of it was included in "current monthly income".  The Debtors'

1

Schedules I and J indicate that they have monthly income of $6120.82 and monthly expenses of $6054.50, with a balance of $66.32 each month. Schedules I and J likewise included a pro rata figure attributable to the bonus. The case was declared an "asset case" on June 6, 2012, as Chapter 7 Trustee had noted that the possible assets consist of the bankruptcy estate's pro rated share of the Debtors' 2012 state and federal tax refunds.

The United States Trustee filed her "Statement of Presumed Abuse" on July 10, 2012 and moved to dismiss the case under §§707(b)(2) and (3) ("the UST's Motion"), on August 6, 2012, to which the Debtors objected. The UST's recalculations with respect to §707(b)(2) actually favored the Debtors. After lengthy oral argument before the Court at the hearing held on September 26, 2012, the attorney for the UST acknowledged that the Debtors' current financial condition did not warrant conversion or dismissal of the case at this juncture. Rather, the UST argued that the case should be dismissed under the §707(b)(3) "totality of the circumstances" standard because the current court ordered child support obligation of $1492.00 (the "Support Payment") will no longer be in effect in two years, thus giving the Debtors *in two years* that extra source from which a chapter 13 plan could be funded. In the interim, so argues the UST, the Debtors could pay $50 a month under a chapter 13 plan given their current monthly disposable income of $66.32.

### *§707(b)(3)*

Under § 707(b)(3), when this Court is to determine whether "the granting of relief would be an abuse of the provisions of this chapter," the Court is to consider: "(A) whether the debtor filed the petition in bad faith; or (b) the totality of the

circumstances… of the debtor's financial situation demonstrates abuse." The UST has not alleged bad faith here. However, the UST notes that the Debtors here have annual income in excess of $100,000 and, combined with the cessation of the Support Payment within two years, the granting the Debtors chapter 7 relief would be an abuse based on the "totality of the circumstances" under §707(b)(3)(b).

"Totality of the circumstances" is not defined in the bankruptcy code but "a debtor's actual current and future income and expenses, intentions, and resulting ability or inability to pay are crucial..." in determining the debtor's financial condition. Factors considered include: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition." *In re Vecera,* 430 B.R. 840, 845 (Bankr. S. D. Ind. 2010); *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991). [1] Although these factors and the "totality of the circumstances" test in general allow a more prospective view of the debtor's financial condition, it is still grounded in the debtor's current ability to pay creditors. *In re Grinkmeyer*, 456 B.R. 385, 389 (Bankr. S. D. Ind. 2011) (citing *In re Baeza*, 398 B.R. 692, 698 (Bankr. E. D. Cal. 2008) for the proposition that "the plain language of the statute mandates consideration of the debtor's actual financial situation at the time of filing").

---

[1] The fifth *Green* factor, whether the petition was filed in good faith, is now found in § 707(b)(3)(A).

3

There is no allegation that the Debtors' budget as reflected in Schedules I and J is excessive or unreasonable or that their schedules and statement of current income and expenses not do reasonably and accurately reflect their true financial condition. There was no evidence as to whether the Debtors incurred cash advances and made consumer purchases far in excess of their ability to pay or whether the bankruptcy filing was precipitated by a financial or physical calamity.  From the arguments of counsel in the hearing and the testimony of Mr. Rooney, the Debtors do not have a current ability to pay a meaningful distribution to creditors.  Currently, Mr. Rooney pays the Support Payment, but the anticipation that it will cease in two years is too speculative upon which to base dismissal of the case.  This Court is hesitant to dismiss a case based on the assumption that the Debtors "might" have additional income in two years, despite the fact that they have *no current ability* to fund in a meaningful way a chapter 13 plan. And, "might" is the proper term here, as the Debtors just as likely will not have this income available in two years as they have other children that will be of college age and the child for whom the support is paid may need such support beyond the age of emancipation.  Furthermore, chapter 13 plan payments of $50 a month as suggested by the UST are negligible and, after accounting for trustee's fees, less than $1200 would be available for claims over the first two years of the plan.  The Court concludes that the UST has not demonstrated that the Debtors have the current ability to pay.

A debtor's ability to pay a distribution to unsecured creditors is a significant factor, but this Court has held that there must be additional indicia of abuse to dismiss a case under § 707(b)(3).  *Vecera,* 430 B.R. at 845.  The UST alleges no bad faith, and does not contest the Debtors' level of expenses in Schedule J.  Nothing in the record

4

reflects any other factors that suggest additional indicia of abuse. Furthermore, the Debtors are not totally "off the hook" since the chapter 7 trustee has declared this case to be an asset case which presupposes some level of distribution to creditors.  The Court finds no abuse under the circumstances here.  Accordingly, the Court DENIES the UST's Motion.

### # # #

Distribution: Katrina Hecht, Attorney for the Debtors / Jeannette Hinshaw, Attorney for the UST